[Cite as *State v. Wright*, 2012-Ohio-4142.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.     26202 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TEMPERANCE B. WRIGHT | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.     CR 10 06 1509 |

DECISION AND JOURNAL ENTRY

Dated: September 12, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1}    A jury convicted Temperance Wright of two counts of felonious assault for hitting two people with a truck.  Ms. Wright has appealed, arguing that the convictions are against the manifest weight of the evidence because she did not knowingly cause or attempt to cause the people any harm.  This Court affirms the judgment of the trial court because the convictions are not against the manifest weight of the evidence.

BACKGROUND

{¶2}    Near midnight on May 26, 2010, Sierra Goodwin's left leg was nearly severed from her body when her neighbor Temperance Wright pulled into Ms. Goodwin's driveway and hit her with a Chevy Tahoe.  Ms. Goodwin testified that as she and her three-year-old daughter, S.G., were walking home from a cousin's house, they could hear Ms. Wright arguing with her boyfriend, William Darnell Clark.  As Ms. Goodwin approached her front porch, Mr. Clark came

over and asked if he could use Ms. Goodwin's phone. Ms. Goodwin refused the request because Ms. Wright had asked her to stop letting Mr. Clark use her phone.

{¶3} Ms. Goodwin testified that, as she spoke with Mr. Clark, she saw Ms. Wright get into the Chevy Tahoe, pull out of her own driveway, and drive directly into Ms. Goodwin's driveway. As Ms. Wright pulled into Ms. Goodwin's driveway, Mr. Clark ran away. Ms. Goodwin grabbed her daughter's hand and turned toward her house, but before she could get to the stairs, Ms. Wright struck her with the Tahoe, pinning her and S.G. to the front porch. Ms. Goodwin said that, after she was struck, she looked back over her shoulder and saw a smile on Ms. Wright's face as she backed out of Ms. Goodwin's driveway. Ms. Goodwin testified that she was unable to move, so she sat on the ground in front of her porch and screamed for help. Although Ms. Goodwin could hear Ms. Wright and Mr. Clark arguing nearby, nobody came to help her. She heard Mr. Clark say that Ms. Wright was crazy, and Ms. Wright responded that it was Mr. Clark's fault because he should not have been asking to use Ms. Goodwin's phone. After Ms. Goodwin started screaming their names, asking for Ms. Wright or Mr. Clark to call 911, Ms. Wright approached Ms. Goodwin. According to Ms. Goodwin, Ms. Wright said that she would not call the paramedics unless Ms. Goodwin would agree to say that Ms. Wright was not involved in the incident. Ms. Goodwin quickly agreed, and Ms. Wright called 911.

{¶4} The State played a recording of the 911 call for the jury. On it, Ms. Wright can be heard telling the dispatcher that a white truck had struck her neighbor before taking off down the street. The dispatcher asked whether Ms. Wright had injured her neighbor, and Ms. Wright denied having had anything to do with it. Police testified that, when interviewed at the scene, Ms. Wright told them that she did not see the crash, but a white pickup truck was driving away when she came out of her house and heard Ms. Goodwin screaming for help. Officer Daniel

Gump testified that, as he was talking to Ms. Wright on the front porch of her home, he smelled anti-freeze and pointed his flashlight around the area. He noticed tire marks in Ms. Wright's front yard, wet leaves on the running board of her dark blue Chevy Tahoe, and heavy front-end damage. He shined his flashlight on the damage and asked Ms. Wright what had caused it. Ms. Wright told him that she had not realized it had been damaged and that her ex-boyfriend, Mr. Clark, had been using the Tahoe that day. According to Officer Gump, Ms. Wright did not seem to be concerned about the damage to her truck.

{¶5} Another officer walked around the Tahoe with a flashlight and discovered blood and bits of flesh on the front end. Officer Gump took a number of photographs that he believed showed that Ms. Goodwin had been injured by being pinned between the front end of the Tahoe and the corner post supporting her front porch. He believed the front-end damage to the vehicle was consistent with the shape of the post, and he saw damage on and near the post, including blue paint on it and bits of blue plastic car parts on the ground around it. The officers were convinced that the Tahoe had caused Ms. Goodwin's injury.

{¶6} Although Ms. Goodwin initially told police that a white pickup truck had struck her, she later told them that it was Ms. Wright. After Ms. Goodwin identified Ms. Wright in a photo array, police confronted Ms. Wright with Ms. Goodwin's story. At that time, the day after the incident, Ms. Wright told police in a recorded interview that she had caused Ms. Goodwin's injuries. She began crying and told police that she had intended to go buy cigarettes. She said that she had been drinking all evening and she probably should not have been driving. She said that she pulled into Ms. Goodwin's driveway to ask whether Ms. Goodwin wanted anything from the store. Ms. Wright then had a great deal of difficulty backing out of Ms. Goodwin's driveway due to a mechanical problem with the power steering on her Tahoe. She said she had to drive

forward and back a few times to avoid driving through the bushes at the edge of the yard. She said that she thought the truck was in reverse when it was actually in drive. When she hit the gas, the truck lunged forward, hitting Ms. Goodwin.

{¶7} When Ms. Wright testified at trial, she told a very similar story, explaining that she got frustrated and hit the gas too hard, but she thought that the truck was in reverse rather than drive. She said that, as soon as it happened, she backed up and jumped out of her vehicle to see if Ms. Goodwin was all right. Ms. Goodwin asked her to call 911, so Ms. Wright jumped back into the truck, pulled out of Ms. Goodwin's driveway and back into her own, then ran into her house to get her cell phone. She said that she stayed with Ms. Goodwin until paramedics and police officers arrived. Ms. Wright testified that Ms. Goodwin asked her to take care of S.G. until a family member could get her, but Ms. Goodwin testified that she never asked Ms. Wright to watch her child.

{¶8} Ms. Goodwin suffered a significant injury to her left leg. A trauma surgeon testified that the leg was nearly amputated, attached only by skin and some muscle tissue when Ms. Goodwin arrived at the hospital. She had multiple surgeries to graft skin, muscle, and bone from other parts of her body to rebuild her crushed leg. S.G. was also injured in the incident, but her medical treatment was delayed because nobody told the paramedics or police officers at the scene that Ms. Goodwin had a child with her or that anyone else had been involved in the incident. When officers saw Ms. Wright holding a little girl at the scene, they assumed the child was her own.

{¶9} When Ms. Goodwin's mother, Lillian Moore, arrived at the hospital, a nurse gave her Ms. Wright's phone number and told her that Ms. Wright was watching S.G. When officers returned a couple of hours later with Ms. Goodwin's mother, S.G. was sleeping in Ms. Wright's

living room. As soon as Ms. Wright handed the child to Ms. Moore, officers saw that S.G.'s clothing was covered in dried blood, she had a small cut on her chin, and her lip was swollen. Paramedics took S.G. to Akron Children's Hospital, where doctors ran a number of tests and discovered some trauma to her pancreas, mild swelling on her forehead, a cut on her chin, and a swollen lip. A doctor testified that the child recovered quickly from fairly minor trauma to the pancreas, but he explained that it requires a significant amount of trauma to the body to cause any trauma to the pancreas. Ms. Goodwin testified that her daughter recovered quickly from her internal injury, but has a scar on her chin from the incident. Police officers testified that the damage to the porch indicated that the child had likely been pushed through the balusters supporting the railing around the porch, preventing a crush injury.

{¶10} The Summit County Grand Jury indicted Ms. Wright on two counts of felonious assault, one for injuring Ms. Goodwin and one for injuring S.G., two counts of vehicular assault, and one count of obstructing official business. Later, the Grand Jury indicted her on three additional charges of kidnapping S.G. A jury found Ms. Wright guilty of two counts of felonious assault, one count of vehicular assault, one count of obstructing official business, and one count of a lesser included offense of unlawful restraint. In July 2011, the trial court sentenced Ms. Wright to a total of six and a half years in prison, plus a mandatory three years of post-release control, and restitution in an amount "to be determined by the State." Ms. Wright attempted to appeal, but this Court dismissed the attempted appeal for lack of jurisdiction because the sentencing entry imposed restitution but did not specify the amount. Following a hearing, the trial court corrected the entry by removing restitution from the sentence. Ms. Wright has now appealed her corrected sentencing entry.

## MANIFEST WEIGHT

{¶11} Ms. Wright's assignment of error is that her felonious assault convictions are against the manifest weight of the evidence. If a defendant argues that her convictions are against the manifest weight of the evidence, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (9th Dist. 1986).

{¶12} Under Section 2903.11(A)(1) of the Ohio Revised Code, "[n]o person shall knowingly . . . [c]ause serious physical harm to another[.]" Under Section 2903.11(A)(2), "[n]o person shall knowingly . . . [c]ause or attempt to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance." Ms. Wright has challenged the weight of the evidence tending to show that she acted knowingly. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶13} At trial, Ms. Wright testified that she did not intend to hurt anyone. She said that she did not see Mr. Clark in Ms. Goodwin's yard before the incident. She told the jury that it was an accident caused by her car's mechanical problems and, perhaps, her own level of intoxication. She testified that she had consumed at least three shots on the evening of the incident, that she was under the influence of alcohol when she got behind the wheel of the Tahoe, and that she probably should not have been driving.

{¶14} Both women testified that they did not know each other well and had never had any problems with one another before this incident. The State presented evidence tending to show that Ms. Wright and Mr. Clark argued frequently, as they were doing on the night of this incident. There was evidence that Mr. Clark was standing near Ms. Goodwin when Ms. Wright pulled rapidly into the driveway. Ms. Goodwin testified that Ms. Wright did not pull straight into the driveway, but steered a bit right of the driveway to drive directly to where she was standing. Police testified that Ms. Wright struck the part of the porch that is closest to the driveway, but she pulled off the driveway before striking Ms. Goodwin. Officer Gump testified that the damage to the front end of Ms. Wright's Tahoe was located in the center of the grill, going right through the logo on her front license plate.

{¶15} Officer Gump testified that the physical evidence he observed at the scene did not match the story Ms. Wright told about how the incident occurred. Ms. Wright claimed that she pulled into the driveway and stopped some distance in front of Ms. Goodwin's porch to talk to Ms. Goodwin. Then, while trying to maneuver the truck out of the driveway, she accidently pulled forward, striking Ms. Goodwin. Officer Gump testified that he did not see any evidence of braking in the driveway. He showed the jury a photograph of an acceleration mark on the apron of the driveway. He explained that the marks indicate that the vehicle was picking up speed as it is entered the driveway. He also showed photographs of furrows in the gravel on the left side of the driveway and gravel that had fanned out from the bottom of the driveway that caused him to believe a vehicle had pulled into the driveway from the right side and arched into the yard in one continuous motion directly to the point of contact with the front porch without any braking at all. He also testified that the steeper angle of the acceleration marks at the top of

the driveway, near the porch, led him to believe that the truck was being steered directly at the porch.

{¶16} There was no evidence that Ms. Wright and Ms. Goodwin were friends or that they had ever had any conflicts in the past. The State's theory of the case seemed to be that Ms. Wright had intended to hit Mr. Clark with the Tahoe. Ms. Wright told the jury that it was an accident and she did not see Mr. Clark standing near Ms. Goodwin before the incident. To prove felonious assault, the State had to prove that Ms. Wright "knowingly . . . [c]ause[d] serious physical harm" or "knowingly . . . [c]ause[d] or attempt[ed] to cause physical harm to another . . . by means of a deadly weapon[.]" R.C. 2903.11(A). Ms. Wright testified that she chose to drive her Tahoe despite realizing that she was under the influence of alcohol and probably should not have been driving. She also testified that she may have pulled into her neighbor's driveway a little too fast. In any event, she admitted that she struck Ms. Goodwin with the vehicle.

{¶17} The physical evidence supported the State's theory that Ms. Wright accelerated as she pulled into Ms. Goodwin's driveway, that she aimed the truck directly at the people standing near the porch, and that she did not stop the truck until she had pinned Ms. Goodwin against the porch. The jury was free to disbelieve Ms. Wright's testimony about her reason for pulling into Ms. Goodwin's driveway and whether she realized that Mr. Clark was standing beside Ms. Goodwin and her daughter. Based on the evidence, the jury may have believed that Ms. Wright intended to hit Mr. Clark, that she intended to hit Ms. Goodwin, or that she was aware that, under the circumstances, significant injuries were likely if she quickly pulled her truck into the yard where her neighbors were standing. *See* R.C. 2901.22(B) ("A person acts knowingly, regardless of h[er] purpose, when [s]he is aware that certain conduct will probably cause a certain result . . .

.").  This Court cannot say that the jury lost its way and created a manifest miscarriage of justice in finding Ms. Wright guilty of felonious assault.  Her assignment of error is overruled.

CONCLUSION

{¶18}  Ms. Wright's assignment of error is overruled because her felonious assault convictions are not against the manifest weight of the evidence.  The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
BELFANCE, J.
CONCUR.

APPEARANCES:

GREGORY A. PRICE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.